UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMAN AMR PARISH,

                Plaintiff,             Case No. 1:24-cv-271

v.                                Honorable Ray Kent

RANDEE REWERTS et al.,

                Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, Plaintiff has been granted leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues the following DRF staff in their individual and official capacities: Warden Randee Rewerts, Resident Unit Manager Unknown Blair, and Resident Unit Manager Unknown Ward.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff alleges that he was working as a porter on or about April 6, 2022, when Defendant Ward entered the "porter's room" and saw that a rag had been tied around a pipe. (ECF No. 1, PageID.15.) Plaintiff told Defendant Ward that the rag was being used to contain and restrict the spread of black mold spores on the pipe. (*Id.*, PageID.15.) Defendant Ward responded that he would call maintenance to have them determine whether it was in fact black mold. (*Id.*) Defendant Ward gave Plaintiff a "direct order" to remove the rag. (*Id.*) Plaintiff told Defendant Ward that he was not comfortable handling the rag without proper protection to avoid exposure to black mold, but Defendant Ward reiterated his order to remove and dispose of the rag. (*Id.*) Plaintiff complied. (*Id.*)

On April 10, 2022, Plaintiff filed a grievance related to his exposure to a suspected area of black mold. (*Id.*) His grievance was rejected by Defendant Blair, finding that "[n]o violation of policy or procedure occurred." (*Id.*) Shortly thereafter, Plaintiff began experiencing shortness of breath, chest pain, and congestion. (*Id.*, PageID.15–16.) On April 21, 2022, he was seen by health services and was prescribed an albuterol inhaler and an Alvesco inhaler. (*Id.*, PageID.16.)

Also on April 21, 2022, Defendant Blair told Plaintiff that he had written a work order to have the mold cleaned up. (*Id.*) Plaintiff alleges that the mold was never removed. (*Id.*)

On June 23, 2022, Plaintiff was examined by non-party Medical Provider Stephanie Wuest. (*Id.*) Plaintiff told her of his chest pain and shortness of breath. (*Id.*) Medical Provider Wuest prescribed an inhaler. (*Id.*) Plaintiff was seen by healthcare professionals on several more occasions throughout June, July, and August 2022, related to his symptoms of chest pain and shortness of breath. (*Id.*, PageID.17.)

Plaintiff claims to have suffered respiratory damage, chest pains, and shortness of breath as a result of his exposure to black mold. (*Id.*, PageID.5.) He brings claim under 42 U.S.C. § 1983

for violation of his First, Eighth, and Fourteenth Amendment rights, claims under 42 U.S.C. § 1985 and 42 U.S.C. § 1986, claims for violation of federal criminal law under 18 U.S.C. §§ 241–42, and claims for violation of Michigan state law. (*Id.*, PageID.5, 13.) Plaintiff seeks monetary damages and declaratory relief. (*Id.*, PageID.5–6, 19–20.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.        Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Here, Plaintiff brings claims against Defendants for violation of Plaintiff's First, Eighth, and Fourteenth Amendment rights. (ECF No. 1, PageID.2–3, 13.) Each will be addressed in turn.

### 1.        Official Capacity Claims

As a preliminary matter, Plaintiff brings claims against Defendants in both their individual and official capacities. (ECF No. 1, PageID.2–3.) Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v.*

*Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Therefore, Defendants Rewerts, Blair, and Ward, in their official capacities, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court will dismiss Plaintiff's damages claims against them in their official capacities.

In addition to his claims for damages, Plaintiff also seeks declaratory relief. An official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, however, Plaintiff is no longer confined at DRF, which is where he avers Defendants Rewerts, Blair, and Ward are employed and where the harm allegedly occurred.

The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Underlying this rule is the premise that such relief is appropriate only where a plaintiff can show

a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiff is now incarcerated at MSP and has not alleged facts that would show that he will be subjected to further future conduct by Defendants Rewerts, Blair, and Ward. Therefore, Plaintiff does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581. Accordingly, the Court will dismiss Plaintiff's official capacity claims in their entirety.

## 2. First Amendment Claims

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Nothing in Plaintiff's complaint speaks to an alleged violation of Plaintiff's First Amendment rights.

To the extent that Plaintiff claims that the denial of Plaintiff's grievances violated Plaintiff's First Amendment right to petition the government, it did not. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

To the extent that Plaintiff intends to bring a claim for retaliation, the facts within his complaint do not support such a claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, a prisoner has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Here, Plaintiff states that he told Defendant Ward that he did not feel comfortable removing the rag that had been tied around what he believed to be black mold. (ECF No. 1, PageID.15.) He also states that he later filed a grievance related to his exposure to a suspected area of black mold. (*Id.*) Plaintiff's verbal statement and his written grievance satisfy the first element of a retaliation claim.

However, Plaintiff fails to satisfy the remaining elements of a retaliation claim. To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison

official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. To satisfy the third element, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

Here, Plaintiff describes only that Defendant Ward gave Plaintiff a "direct order" to remove the rag that had been tied around the pipe. (ECF No. 1, PageID.15.) Plaintiff does not allege that Defendant Ward took any action against Plaintiff in response to Plaintiff's comments and does not provide the Court with any facts that would suggest that Defendant Ward's order was motivated by Plaintiff's speech rather than, for example, the presence of the rag that he had originally requested be removed. Plaintiff further does not allege that any named Defendant took any action against him in response to his April 10, 2022, grievance. Accordingly. Plaintiff fails to state a claim for First Amendment retaliation.

Because Plaintiff's complaint does not contain any facts that would plausibly suggest any violation of Plaintiff's First Amendment rights, the Court will dismiss Plaintiff's First Amendment claims.

### 3. Eighth Amendment Claims

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison

confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

11

### a.      Defendants Ward and Blair

Plaintiff alleges that he spoke with Defendant Ward on April 6, 2022, and informed Defendant Ward that a rag tied to a pipe was covering black mold. (ECF No. 1, PageID.15.) Defendant Ward told Plaintiff to remove the rag despite Plaintiff's fear of exposure to the black mold spores. (*Id.*) Defendant Ward told Plaintiff that he was going to call maintenance to determine whether the substance was in fact black mold. (*Id.*)

Plaintiff filed a grievance related to his exposure to the "black mold spores" on April 10, 2022. (*Id.*, PageID.15.) Defendant Blair rejected Plaintiff's grievance, but, on April 21, 2022, told Plaintiff that he had written wrote a work order to have the black mold cleaned up. (*Id.*, PageID.16.) Plaintiff claims that the mold was never cleaned up. (*Id.*) Even accepting Plaintiff's statements as true, Plaintiff fails to allege any facts from which the Court can infer that Defendants Ward and Blair were aware of a serious risk of harm to Plaintiff and then disregarded that risk.

The facts within Plaintiff's complaint suggest only that Defendants Ward and Blair knew that there was mold covering a small area on a pipe within the porter's room and that Plaintiff had been briefly exposed to that mold on April 6, 2022. There is nothing to indicate that these Defendants were aware that this small area of mold posed a significant risk to Plaintiff's health or safety or that they ever learned of Plaintiff's later chest pain and breathing problems. Therefore, Plaintiff's claim fails to meet the objective prong of a deliberate indifference claim.

This Court considered a claim of black mold exposure in *Patrick v. Schroeder*, No. 2:23-cv-26, 2023 WL2522057 (W.D. Mich. Mar. 15, 2023), *aff'd*, No. 23-1313, slip order at 2–3 (6th Cir. Oct. 5, 2023). In that case, the plaintiff alleged that his unit had black mold within the walls, making it "uninhabitable for over 10 [years]." *Id.* The Court resolved the plaintiff's Eighth Amendment conditions of confinement claim as follows:

> Here, nothing in Plaintiff's complaint suggests that the mold is airborne. Although Plaintiff states that he has experienced breathing issues, he attributes that to the mold without providing any further explanation or any supporting allegations that could permit the Court to infer that the mold "created a substantial risk to his health." *See Rogers v. Maclaren*, No. 1:20-cv-263, 2020 WL 3481541, at *8 (W.D. Mich. June 26, 2020). Plaintiff's general "allegations about the presence of mold do not demonstrate the existence of a sufficiently serious risk to prisoner health." *Id.* Plaintiff's allegations, therefore, fail to meet the objective prong of the deliberate indifference standard.

*Id*. at *5. The Sixth Circuit Court of Appeals affirmed the dismissal stating: "The district court did not err by dismissing Patrick's Eighth Amendment claims. In the body of his complaint, Patrick did not make specific factual allegations against any defendant showing that they knew of and disregarded an excessive risk from the alleged mold." *Patrick v. Schroeder*, No. 23-323, slip order at 2–3 (6th Cir. Oct. 5, 2023). The same result is appropriate here.

As to the subjective prong, Plaintiff alleges that he talked with Defendant Ward on April 6, 2022, and that he later submitted a grievance regarding the presence of black mold, which was denied by Defendant Blair. However, Plaintiff also alleges that Defendant Ward told Plaintiff that he would have maintenance examine the substance on the pipe, and Defendant Blair told Plaintiff that he had issued a work order to have the black mold removed. Plaintiff claims Defendant Blair did not follow up to ensure that the work was completed. These actions, even if negligent, do not rise to the level of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). Plaintiff's Eighth Amendment conditions of confinement claims against Defendants Ward and Blair regarding the presence of black mold will, therefore, be dismissed.

### b.  Defendant Rewerts

Plaintiff claims that Defendant Rewerts was notified of the presence of black mold within the porter's room "via multiple kites from Plaintiff." (ECF No. 1, PageID.18.) However, the only

kites referenced in Plaintiff's complaint were sent to health services. (*Id.*, PageID.17.) There is nothing from which this Court can infer that Defendant Rewerts received those kites or that he was otherwise made aware of Plaintiff's continued concerns.

Rather, Plaintiff's well-pleaded factual allegations show that Defendant Rewerts received and rejected Plaintiff's appeal of his grievance related to the April 6, 2022, interaction. (*Id.*, PageID.16). However, the United States Court of Appeals for the Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.* Moreover, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied, or responded to, a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn*, 1994 WL 105907, at *1 (discussing that there is no constitutional right to a grievance procedure).

Finally, Plaintiff generally alleges that Defendant Rewerts is the DRF Warden (ECF No. 1, PageID.2), and that he is responsible for ensuring the safety and well-being of DRF prisoners but failed to protect Plaintiff from exposure to black mold (*id.*, PageID.14, 18). Government officials, such as Defendant Rewerts, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676;

14

*Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, as discussed *supra*, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Plaintiff fails to allege any facts showing that Defendant Rewerts encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff has also not alleged any facts from which the Court could infer that Defendant Rewerts was aware that the isolated area of mold posed a serious risk of harm to Plaintiff or he was aware that the issue had not been adequately addressed following Plaintiff's interactions with Defendants

Ward and Blair on April 6, 2022, and April 21, 2022. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to show that Defendant Rewerts was personally involved in the alleged violations of Plaintiff's constitutional rights.

For each of the foregoing reasons, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Rewerts.

### 4.    Fourteenth Amendment Claims

Plaintiff alleges that Defendants violated his Fourteenth Amendment rights and claims that he was deprived of "equal privileges and immunities" under the Constitution. (ECF No. 1, PageID.13.) He does not further elaborate as to the basis of these claims.

To the extent that Plaintiff intends to bring a Fourteenth Amendment due process claim related to the denial of his administrative grievance and appeals, he cannot state a claim. Plaintiff has no Fourteenth Amendment due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001). Because Plaintiff has no liberty interest in the grievance process, the denial of his administrative grievance could not deprive him of due process.

16

To the extent that Plaintiff's reference to "equal privileges and immunities"[2] indicates an intent to raise a claim for violation of Plaintiff's Fourteenth Amendment right to equal protection, his claim will likewise be dismissed. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal protection claim, a plaintiff "must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ*., 470 F.3d 250, 260 (6th Cir. 2006). To state an equal protection claim, Plaintiff must allege facts that support his allegation that others were treated differently than he was and he must allege facts that would support the inference that those who were treated differently were similarly situated in all relevant respects. *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) ("To be a similarly-situated [person], the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have

---

[2] To the extent that Plaintiff intended to raise a claim under the Privileges or Immunities Clause of the Fourteenth Amendment, he fails to state such a claim. The Privileges or Immunities Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, § 1. "[T]he privileges or immunities of national citizenship to which [the clause] refers have been construed narrowly, extending to the right to petition Congress, to vote for national officers, to enter public lands, to be protected against violence while in the custody of a United States Marshal[], and to inform federal authorities of the violation of federal law." *Snyder v. Smith*, 7 F. Supp. 3d 842, 857 (S.D. Ind. 2014) (citing *Murphy v. Mount Carmel High Sch.,* 543 F.2d 1189, 1192 n.2 (7th Cir. 1976); *Saenz v. Roe,* 526 U.S. 489, 502 (1999)); *see also Slaughter–House Cases,* 83 U.S. 36 (1872). Here, Plaintiff fails to allege any facts describing how Defendants violated his rights under the Privileges or Immunities Clause of the Fourteenth Amendment.

engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'" (quoting *Ercegovich v. Goodyear Tire & Rubber Co*., 154 F.3d 344, 352 (6th Cir. 1998))); *Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ*., 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) ("Plaintiffs . . . fail to plead the existence of a similarly situated comparator...[therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim.").

Plaintiff fails to allege any facts to suggest that he was treated differently than others, much less that the others were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's Fourteenth Amendment equal protection claims will be dismissed.

Accordingly, for the reasons set forth above, Plaintiff's Fourteenth Amendment claims will be dismissed.

### B.       Sections 1985 and 1986 Claims

Plaintiff also makes passing reference to claims under 42 U.S.C. §§ 1985 and 1986. (ECF No. 1, PageID.13.) He cites the statutory sections under the heading of "Basis for Jurisdiction," but does not mention either statute after this initial reference.

Section 1985 provides:

(1) Preventing officer from performing duties

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985. There are no allegations in Plaintiff's complaint that would support a claim that any defendant: (1) conspired to prevent an officer of the United States from performing his duty; (2) conspired to intimidate a participant in a proceeding in a court of the United States or conspired to interfere with due process in state courts with the intent to deprive persons of their equal protection rights; or (3) conspired to deprive any person of the equal protection of the laws.

Plaintiff fails to state a claim under 42 U.S.C. § 1985 and his invocation of the statutory section is frivolous.

"Section 1986 is designed to punish those who aid and abet violations of § 1985." *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc*., 32 F.3d 989, 994 (6th Cir. 1994) (quoting *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980)). If a court finds no violation of § 1985, there can be no violation of § 1986. *Id*. Accordingly, Plaintiff has failed to state a claim for violation of § 1986. Plaintiff's § 1986 claim is frivolous as well.

### C.     Violation of Federal Criminal Law

In his complaint, Plaintiff makes reference to alleged violation of 18 U.S.C. §§ 241 and 242 (ECF No. 1, PageID.13–14), which imposes criminal penalties for the deprivation of constitutional rights. (*Id.*) However, federal criminal statutes do not confer rights on private citizens. *See United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) (holding that "the district court properly dismissed Oguaju's claim pursuant to 18 U.S.C. §§ 241 or 242 because Oguaju has no private right of action under either of these criminal statutes" (citation omitted)); *Am. Post Workers Union, AFL-CIO v. Independent Postal System of America, Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) ("Equally important is the firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions."); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Accordingly, Plaintiff's reference to 18 U.S.C. § 242 fails to state a claim upon which relief can be granted, and any intended claim will be dismissed.

### D.     State Law Claims

Lastly, Plaintiff's allegations that Defendants' actions "amounted to gross negligence and intentional infliction of mental and emotional pain . . ." (ECF No. 1, PageID.5) suggest that

Plaintiff is asserting state law tort claims against Defendants. To the extent Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state law tort claims, this Court declines to do so.

Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, because the Court will dismiss Plaintiff's federal claims against all Defendants, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be

21

dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   April 26, 2024                              /s/ Ray Kent
                                                     Ray Kent
                                                     United States Magistrate Judge